UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JEREMIAH FOLSOM HERBERT,

        Plaintiff,

     v.

DEPUTY SUPERINTENDENT E.
RACZKOWSKI, D.S.S. 7am to 3pm
Tour Shift, Attica C.F.; SERGEANT W.
TOMPOROWSKI, 3pm to 11pm Tour
Shift, Attica C.F.; SERGEANT A.J.
HOLMAN, 3pm to 11pm Tour Shift,
Attica C.F. (R.R.U. Unit);
CORRECTIONAL OFFICER
GOODWIN, 3pm to 11pm Tour Shift, A-
Block Company, Attica C.F.;
CORRECTIONAL OFFICER J. ELLIS,
3pm to 11pm Tour Shift, SHU/R.R.U.
Unit, Attica C.F.,

        Defendants.

_____

24-CV-0485 (JLS)

## <u>ORDER</u>

*Pro se* Plaintiff, Jeremiah Folsom Herbert, is a prisoner confined at the Attica

Correctional Facility ("Attica").  He filed a Complaint alleging claims under 42

U.S.C. § 1983 against Defendants—including (1) failure to protect; (2) use of

excessive force; (3) unsanitary cell conditions; (4) denial of food; (5) denial of medical

care; (6) a false misbehavior report filed in retaliation and without due process; (7)

other forms of retaliation for filing grievances; and (8) sexual assault.  Dkt. 1.  He

also filed a motion seeking leave to proceed *in forma pauperis* and filed a signed

authorization.  Dkt. 7 and 8.  Additionally, he moved for a temporary restraining

order ("TRO") and preliminary injunction seeking, *inter alia*, an order (1)

transferring him from Attica; (2) directing Defendants to stop their acts of abuse

and physical harm; and (3) providing him with sanitary living conditions and

medical attention for the injuries Defendants caused.  Dkt. 9.

Plaintiff's claims alleging failure to protect, use of excessive force, and

unsanitary cell conditions may proceed to service.  However, his claims alleging

denial of food, denial of medical care, a false misbehavior report filed in retaliation

and without due process, retaliation, and sexual assault will be dismissed under 28

U.S.C. §§ 1915(e)(2)(B) and 1915A, with leave to amend.  Further, Plaintiff's motion

for a TRO and preliminary injunction is denied without prejudice.

## DISCUSSION

This Court grants Plaintiff permission to proceed *in forma pauperis* because

Plaintiff met the statutory requirements of 28 U.S.C. § 1915(a) and filed the

required authorization.  Dkt. 7 and 8.  Therefore, under 28 U.S.C. §§ 1915(e)(2)(B)

and 1915A(a), this Court must screen Plaintiff's complaint.

Section 1915 "provide[s] an efficient means by which a court can screen for

and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir.

2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).  The court shall

dismiss a complaint in a civil action in which a prisoner seeks redress from a

governmental entity, or an officer or employee of a governmental entity, if the court

determines that the action (1) fails to state a claim upon which relief may be

granted; or (2) seeks monetary relief against a defendant who is immune from such

relief.  *See* 28 U.S.C. § 1915A(b)(1)–(2).  Generally, the court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (internal quotation marks omitted).  However, a court may deny leave to amend pleadings when any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## I.    THE COMPLAINT

In evaluating a complaint, the court must accept all factual allegations as true and must draw all inferences in the plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999).  "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008) ("[E]ven after *Twombly*, dismissal of a *pro se* claim as insufficiently pled is appropriate only in the most unsustainable of cases.").

Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even a *pro se* complaint "must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Shibeshi v. City of New York*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (quoting *Bell Atl. Corp.*, 550

3

U.S. at 570). "A claim will have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other words, although a *pro se* complaint need not provide every detail in support of a claim, it must allege some facts that support the claim. *See id.* (concluding that the district court properly dismissed the *pro se* complaint under section 1915(e)(2) because the complaint did not meet the pleading standard in *Twombly* and *Iqbal*). And even *pro se* pleadings must meet the notice requirements under Rule 8 of the Federal Rules of Civil Procedure, *see Wynder v. McMahon*, 360 F.3d 73, 76 (2d Cir. 2004), and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (alteration in original) (quoting *Twombly*, 550 U.S. at 555).

Plaintiff sued Defendants alleging that they violated his rights under the First, Eighth, and Fourteenth Amendments between March and May 2024, at Attica. Dkt. 1. The Complaint is long and repetitive but, liberally construed, alleges the following.[1]

On March 10, 2024, Plaintiff sent a letter to Defendants Sergeant A.J. Holman ("Holman") and Deputy Superintendent of Security E. Raczkowski ("Raczkowski") regarding threats of violence towards him and issues he was having

---

[1] In light of the procedural posture of this case—an initial review pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)—the recitation of facts is drawn exclusively from Plaintiff's Complaint, the contents of which must be accepted as true for purposes of this review. *See Erickson*, 551 U.S. at 93–94 (citing *Bell Atl. Corp.,* 550 U.S. at 555–56).

with known gang members.  He asked to be transferred to a different housing unit.
Dkt. 1, at 16, 20, 24, 46.[2]  On April 18, 2024, inmates Nelson and Hardy threw milk
and feces in Plaintiff's living quarters to provoke an altercation, and Plaintiff
informed Defendants Holman, Raczkowski, and Corrections Officer ("CO") Goodwin
("Goodwin") about what had occurred.  *Id.* at 16.  Later that day, Nelson and Hardy
assaulted Plaintiff on A-Block 5-Company.  *Id.* at 16, 20, and 22.  Goodwin was
working on the unit at the time.  *Id.* at 24.

Plaintiff was taken to the Erie County Medical Center ("ECMC") for X-rays
and an M.R.I.  He suffered bruises to his face, body, and head, and suffers from
migraines, dizziness, and emotional distress.  *Id.* at 23.  Plaintiff alleges that
Defendants Raczkowski, Goodwin, Holman, Sergeant Tomporowski
("Tomporowski"), and C.O. Ellis ("Ellis") exhibited deliberate indifference and failed
to protect him from the assault.  *Id.* at 24.

Following Plaintiff's return from ECMC, on April 19, 2024, Defendants
Holman, Tomporowski, Raczkowski, Goodwin, and Ellis took Plaintiff to a cell in
the Special Housing Unit ("SHU") and punched, kicked, and assaulted him on the
way.  Plaintiff was handcuffed and did not provoke the assault.  *Id.* at 17, 23.

On April 20, 2024, Defendants Holman, Tomporowski, Raczkowski, Goodwin,
and Ellis placed Plaintiff in SHU Cell C-E-18.  The cell had no running water and
contained black mold, feces, and mildew on the walls and floor.  *Id.* at 17, 25–26, 28.

---

[2] The pages referenced are to those generated by the Court's Case Management and
Electronic Case Files System (CM/ECF).

He was also denied adequate showers, food and meals, and proper cell cleaning supplies. *Id.* He remained in this cell for over three weeks. *Id.* at 17.

Plaintiff filed grievances on April 22, 26, and 28, 2024, complaining about "how E. Raczkowski, J. Ellis, Goodwin, A.J. Holmes, and Sgt. W. Tomporowski . . . subject[ed] him to intentional harm, excessive force, and safety issues." *Id.* at 17,[3] 47–48, 59.[4] On May 2, 2024, upon Raczkowski's orders, Holman, Tomporowski, Goodwin, and Ellis dragged Plaintiff from SHU Cell C-E-18 headfirst and with handcuffs, and Ellis, Holman, and Tomporowski kicked him in the upper back. *Id.* at 18, 30. He was then re-housed in Cell B-N-6 in a Residential Rehabilitation Unit and was sexually assaulted during a strip search. *Id.* at 37. This cell had a broken sink and toilet, and was infested with bugs, insects, and black mold. *Id.* at 18, 28. Later that day, Plaintiff asked Ellis, Tomporowski, Holman, and Raczkowski for medical attention. *Id.* at 18. He was experiencing stomach and back pains and had difficulty breathing. *Id.* His "pleas for help were indeed ignored." *Id.* Plaintiff claims he was assaulted because he filed grievances. *Id.*

On May 3, 2024, Defendants Raczkowski, Ellis, Holman, Tomporowski, and Goodwin took Plaintiff to a room inside the SHU's Medical Unit, that did not have

---

[3] Plaintiff's Complaint capitalizes many letters but not all. The Court removes the unnecessary capitalizations.

[4] Plaintiff attaches several grievances and grievance documents to his Complaint (Dkt. 1, at 47–65), but it appears only a few of them relate to the failure to protect and excessive force claims alleged in the Complaint. *Id.* at 47–49, 59. Further, the grievance form attached (*id.* at 47), dated April 23, 2024, is entitled "Failure to Protect" but it does not provide any details related to the grievance and states, "See Attached." There is nothing attached. *Id.*

cameras, and punched him in the face and assaulted him. *Id.* at 30–33. Plaintiff suffered severe pain in his back and shoulder, and swelling to his wrist and eyes. *Id.* at 30, 33. On May 3 and 5, 2024, these same Defendants denied him adequate medical care for his injuries. *Id.* at 33.

On May 9, 2024, Goodwin, Holman, and Tomporowski, upon Raczkowski's orders, went to Plaintiff's cell, berated and chastised him, knocked him into the wall, dragged him out of his cell in handcuffs, and assaulted him. *Id.* at 37. He suffered injuries to his head, back, and nose and was bleeding from his anal area. *Id.*

Plaintiff alleges that, between March and May 2024, Defendants retaliated against him in several ways for filing grievances. *Id.* at 35–36. Defendants filed false misbehavior reports against him, which led to a 120-day period in SHU. *Id.* at 36. Additionally, he was subjected to excessive force and unsanitary cell conditions and denied adequate food, meals, showers, telephone access, and cell cleaning supplies. He was further denied medical treatment for several injuries and illnesses caused by the assaults and unsanitary cell conditions, including stomach pain, severe bleeding, chronic migraines, depression, post-traumatic stress disorder, and "excruciating" back pain. *Id.* at 41. Plaintiff seeks compensation and punitive damages. *Id.* at 42.

## II.   SECTION 1983 CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state

law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875–76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under section 1983, a plaintiff must allege the individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, the theory of *respondeat superior* is not available in a section 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). "[T]here is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks omitted).

## A.    Failure to Protect

Plaintiff alleges that Defendants failed to protect him from the assault by inmates Hardy and Nelson. Dkt. 1, at 16, 20, 22, 24. The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). The

assessment of whether the measures taken are reasonable turns on an analysis of two factors.  First, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."  *Id.* at 834.  Second, the officials must be shown to have demonstrated a deliberate indifference to the inmate's safety.  *Id.* Deliberate indifference is measured subjectively, meaning,

> a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to [the] inmate['s] health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

Plaintiff alleges that he wrote to Raczkowski and Holman regarding threats of violence against him and "issues" he had with known gang members.  He asked to be moved.  Dkt. 1, at 16, 20, 46.  He further alleges that after Nelson and Hardy threw milk and feces in his living quarters, he informed Holman, Raczkowski, and Goodwin about what had occurred.  *Id.* at 16.  Later that day, Nelson and Hardy assaulted him.  *Id.* at 16, 20, and 22.

At this point in the litigation, and mindful of the Second Circuit's directives to construe *pro se* pleadings liberally, the Court determines that this claim may proceed to service against Defendants Raczkowski, Holman, and Goodwin.

## B.    Use of Excessive Force

Plaintiff alleges that on several occasions—April 19 and 22, and May 2, 3 and 9, 2024—he was assaulted by Holman, Tomporowski, Goodwin, and Ellis and that Raczkowski ordered the assaults.  Dkt. 1, at 17–18, 23, 25–26, 30–33, 37.  He

further alleges that he suffered several injuries from these assaults and was denied medical treatment by Defendants following the assaults. *Id.* at 30, 33.

It is well-settled that "the core judicial inquiry [for determining whether prison officials have violated the Eighth Amendment by using excessive physical force] is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312 (1986)).  To assess an Eighth Amendment claim, the Court must consider both the subjective and the objective components of the alleged violations. *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994).

> The objective component considers the "seriousness of the injury." *Id.*

> Under the *Whitley* approach, the extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'

*Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

> "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." *Id.*

> The subjective component addresses whether the defendant possessed a "wanton" state of mind while engaging in the use of force.

> In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and "any efforts made to temper the severity of a forceful response."

*Id.* Thus, while the Eighth Amendment "excludes from constitutional recognition *de minimis* uses of physical force," a plaintiff may state a cognizable Eighth Amendment claim if "the use of force is . . . of a sort repugnant to the conscience of mankind." *Id.* at 9–10 (internal quotation marks omitted).

Here, Plaintiff alleges that, between April and May 2024, Tomporowski, Holman, Goodwin, and Ellis, at the direction of Raczkowski, dragged him from his cell and kicked and punched him, while he was cuffed and without provocation. He suffered several injuries from these beatings. Based on these allegations, which are assumed true, Plaintiff's excessive force claims may proceed to service against each Defendant.

## C.    Conditions of Confinement

Plaintiff claims he was twice moved to cells that were unsanitary. The first cell, C-E-18, in which he was housed for three weeks, contained black mold, feces and mildew on the walls and floors, was infested with insects and rats, and did not have running water. Dkt. 1, at 17, 25–26, 28. The second cell, B-N-9, had a broken sink and toilet, was smeared with feces, and contained insects and black mold. *Id.* at 28. He also was denied supplies to clean his cells. *Id.* at 26. He claims he suffered stomach pains, nausea, continuous migraines, and dizziness. *Id.* at 26, 28. Plaintiff also alleges that he was denied adequate showers and food. *Id.* at 17, 25–26, 35–36.

11

1.   <u>Unsanitary Cell Conditions</u>

To state a cognizable Eighth Amendment challenge to conditions of confinement, a plaintiff must plead both an objective element and a subjective element. *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). The objective element is met if the plaintiff alleges conditions that objectively posed an unreasonable risk of serious damage to his health to deny him "the minimal civilized measure of life's necessities." *Id.* (internal quotation marks omitted). When considering these conditions, a court should "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). "In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id.*

The subjective element requires a plaintiff to allege that the defendant acted with deliberate indifference regarding the risks posed by the condition. *Walker*, 717 F.3d at 125. The defendant must have known of the condition that posed an excessive risk to inmate health and chosen to disregard it. *Id.*; *Willey v. Kirkpatrick*, 801 F.3d 51, 66 (2d Cir. 2015) (summarizing Eighth Amendment standards and finding that the district court's dismissal of a claim alleging unsanitary conditions was a "constrained conception of the Eighth Amendment's protections against unsanitary conditions").

In *Willey*, the Second Circuit rejected "that there is any bright-line durational requirement for a viable unsanitary-conditions claim . . . [n]or is there some

12

minimal level of grotesquerie required . . . ." 801 F.3d at 68. "The severity of an exposure may be less quantifiable than its duration, but its qualitative offense to a prisoner's dignity should be given due consideration." *Id.* "Although the seriousness of the harms suffered is relevant to calculating damages and may shed light on the severity of an exposure, serious injury is unequivocally not a necessary element of an Eighth Amendment claim." *Id.* (citing *Hudson*, 503 U.S. at 4).

Again, at this stage of the litigation and mindful of the Second Circuit's directive to construe *pro se* pleadings liberally, the unsanitary-conditions claim may proceed to service against each Defendant.

### 2.   Denial of Food

The Second Circuit has held that, "under certain circumstances[,] a substantial deprivation of food may well be recognized as being of constitutional dimension." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983). Such a substantial deprivation creates an Eighth Amendment claim if it "presents an immediate danger to the inmate's health or well-being." *Chapdelaine. v. Keller*, No. 95–CV–1126 RSP/GLS, 1998 WL 357350, at *12 (N.D.N.Y. Apr. 16, 1998). Plaintiff has made no allegations regarding the number of meals he was denied or the number of days he was denied food or meals; nor how the alleged denial of food affected his health. *Compare Barclay v. New York*, 477 F. Supp. 2d 546, 555 (N.D.N.Y. 2007) (finding at the summary judgment stage that denial of meals for two or three days did not state a claim where there was no evidence that the denial was malicious and no evidence to support plaintiff's claim he suffered "ill effects"), *with Williams v.*

13

*Coughlin*, 875 F. Supp. 1004, 1012–13 (W.D.N.Y. 1995) (declining to dismiss a claim involving approximately a two-day denial of meals); *Hodge v. Ruperto*, 739 F. Supp. 873, 878 (S.D.N.Y. 1990) (finding a two-and-a-half-day deprivation of food and water egregious deprivation for a pretrial detainee).

Accordingly, this claim must be dismissed, but Plaintiff is granted leave to amend.

### D.   Denial of Medical Care

Plaintiff asserts generally that he was denied medical care following the alleged assaults and at other times when he requested it.  He also asserts several injuries or medical illnesses caused by the assaults or unsanitary cell conditions. Dkt. 1, at 30, 33, 35–36.  To show that prison medical treatment was so inadequate as to amount to "cruel and unusual punishment" prohibited by the Eighth Amendment, a plaintiff must prove that the defendant's actions or omissions amounted to "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05.

The deliberate indifference standard "incorporates both objective and subjective elements.  The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of

14

mind." *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003) (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance*, 143 F.3d at 702). "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Smith*, 316 F.3d at 187.

Plaintiff's allegations, regarding the denial of medical care, are conclusory. He generally alleges that, at various unspecified times, he requested medical care or treatment following the alleged assaults, or after placement in the unsanitary cells, and that his requests were ignored. Dkt. 1, at 18, 30, 33. He claims that he suffered various injuries and symptoms, including stomach pains, neck and back pain, difficulty breathing, a broken nose, impaired vision to his right eye, and migraines. *Id.* at 18, 29, 31, 33, 36. While not discounting the nature of the injuries and illnesses alleged, Plaintiff's claims are too conclusory to state a plausible claim that Defendants were deliberately indifferent to his medical needs. Even assuming the injuries or illnesses are sufficiently serious to allege the objective element, he does not sufficiently assert how Defendants acted with sufficiently culpable states of mind. In other words, he does not adequately allege that Defendants had actual knowledge of his serious medical needs but were deliberately indifferent to them.

15

*See Farmer*, 511 U.S. at 837; *Brock v. Wright*, 315 F.3d 158, 164–65 (2d Cir. 2003);
*Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). "[N]ot every lapse in prison
medical care will rise to the level of a constitutional violation." *Smith*, 316 F.3d at
184.

The Court, therefore, determines that Plaintiff has not sufficiently alleged
that Defendants were deliberately indifferent to his injuries and illnesses. Alleging
only that he requested medical care, and his requests were ignored, is not sufficient.
Plaintiff will be permitted to amend this claim to allege how each Defendant, by
their own actions, denied him medical care or treatment for the injuries or illnesses
alleged.

### E.    False Misbehavior Report

At one point in the Complaint, Plaintiff asserts that false misbehavior reports
were filed against him in retaliation for his grievances and that, as a result of the
reports, he was sentenced to 120 days of solitary confinement in violation of his due
process rights. Dkt. 1, at 35. He alleges generally that Defendants retaliated
against him, but he does not allege who lodged the misbehavior reports against him
or what process he was not afforded at any undiscussed disciplinary hearings. *Id.*
He alleges only that, on April 19, 2024, he was placed inside SHU, by Defendants,
until May 13, 2024, and was deprived of adequate food and showers, and suffered
migraines and general pain from the assaults. *Id.* at 36.

"The prison inmate has no constitutionally guaranteed immunity from being
falsely or wrongly accused of conduct which may result in the deprivation of a

16

protected liberty interest." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986).

There are "two exceptions to this rule: when an inmate is able to show either (1)

that he was disciplined without adequate due process as a result of the report; or (2)

that the report was issued in retaliation for exercising a constitutionally protected

right." *Willey*, 801 F.3d at 63 (internal quotation marks omitted). In other words,

"[a]llegations concerning a false misbehavior report are generally only cognizable

when there are other allegations triggering a First Amendment retaliation claim or

Fourteenth Amendment due process claim." *Edwards v. Annucci*, No. 9:19-CV-0254

(MAD/ATB), 2019 WL 3213523, at *5 (N.D.N.Y. July 17, 2019).

While Plaintiff alleges that the false misbehavior reports were filed in

retaliation for his grievances and he was denied due process, Dkt. 1, at 35–36, he

fails to allege either a plausible retaliation or due process claim.

1.  Retaliation

To state a First Amendment retaliation claim, under section 1983, "a prisoner

must demonstrate the following: '(1) that the speech or conduct at issue was

protected, (2) that the defendant took adverse action against the plaintiff, and (3)

that there was a causal connection between the protected speech and the adverse

action.'" *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v.

Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds by

Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)); *see also Friedl v. City of New

York*, 210 F.3d 79, 85 (2d Cir. 2000). The Second Circuit has held that, in the prison

context "adverse action" is defined objectively, as retaliatory conduct "that would

deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights . . . ." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003). To prove the "causal connection" prong, the plaintiff "bears the burden of showing that . . . the protected conduct was a substantial or motivating factor in the prison officials' decision to [take the action they did against the] plaintiff." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citing *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)).

A plaintiff can show causal connection by alleging circumstantial evidence of retaliation such as "[t]emporal proximity between an inmate's [protected activity] and [the defendant's] disciplinary action," "evidence of prior good behavior," and statements by the defendant about the motive for the alleged retaliatory action. *Colon v. Coughlin*, 58 F.3d 865, 872–73 (2d Cir. 1995), *abrogated on other grounds by Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020).

There is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001) (collecting cases involving delays ranging from twelve days up to eight months between protected activity and adverse action where a causal inference could be drawn). While a period of four-to-five months might demonstrate sufficient temporal proximity, the Second Circuit has "consistently required some further evidence[, beyond temporal proximity,] of retaliatory animus before

permitting a prisoner to proceed to trial on a retaliation claim." *Faulk v. Fisher*, 545 F. App'x 56, 58 (2d Cir. 2013) (summary order).

The Second Circuit has cautioned that, because of the "ease with which claims of retaliation may be fabricated, [it] examine[s] prisoners' claims of retaliation with skepticism and particular care." *Colon*, 58 F.3d at 872, *abrogated on other grounds by Tangreti*, 983 F.3d at 616–18.

Plaintiff's retaliation claims are too conclusory to state a violation of the First Amendment. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone . . . ."), *overruled on other grounds by Swierkiewicz*, 534 U.S. 506. While he alleges that he filed grievances as early as March 2024, which is protected conduct, *see Graham*, 89 F.3d at 80, and is close in time to the allegations of wrongful conduct, his allegations that the grievances were a substantial or motivating factor for the alleged assaults, denial of medical care, and unsanitary cell conditions are not supported by any facts. Without any non-conclusory allegations that the grievances and the wrongful conduct alleged are causally connected, his retaliation claims are little more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted). Accordingly, Plaintiff does not state a plausible retaliation claim and, thus, his

claim for a false misbehavior report based on retaliation fails.  He, however, will be permitted to file an amended complaint.

### 2.   Due Process

Plaintiff alleges that he served 120 days in solitary confinement as a result of the misbehavior reports.  The Court determines that, at this stage in the litigation, Plaintiff has asserted a protected liberty interest.  *See Palmer v. Richards*, 364 F.3d 60, 64–65 (2d Cir. 2004) ("Where the plaintiff was confined for an intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required.") (internal quotation marks omitted).   However, Plaintiff does not allege anything related to his hearing(s) and how he was denied due process at the hearing(s).

Once a plaintiff alleges a liberty interest, he is entitled to certain protections before being subjected to "special confinement that imposes an atypical hardship." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555–56 (1974)).  "[A]n inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Id.* (citing to *Wolff*, 418 U.S. at 563–67).

Because Plaintiff alleges nothing related to his disciplinary hearing(s) or what due process protections were denied, he fails to allege that he was denied due

20

process based on the false misbehavior report.  Accordingly, his false misbehavior report and due process claims are dismissed, with leave to amend.

### F.   Retaliation

Plaintiff alleges that he was subject to various forms of retaliation because he filed grievances as early as March 2024.  As addressed above, he does not sufficiently allege that the grievances were a substantial or motivating factor for the assaults, denial of medical care, or conditions of confinement that he allegedly endured.  Thus, this claim is dismissed, with leave to amend.

### G.   Sexual Assault

Plaintiff alleges in wholly conclusory terms that on May 2, 2024, he was "the victim of sexual assault by" Tomporowski, Ellis, and Raczkowski during a strip search.  Dkt. 1, at 37.  He provides no further allegations regarding this assault.  Allegations of sexual abuse or harassment can amount to a violation of a prisoner's right to be free from cruel and unusual punishment.  Indeed, "[a] corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment." *Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015).

Here, Plaintiff alleges nothing to suggest that he can state a viable Eighth Amendment claim based on a sexual assault.  Because Plaintiff is *pro se*, he is granted leave to amend the Complaint to assert, if possible, a plausible claim of sexual assault in violation of the Eighth Amendment.

### III.   MOTION FOR A TRO AND PRELIMINARY INJUNCTION

Plaintiff has moved for a TRO and preliminary injunction based on the
allegations asserted in his Complaint. Dkt. 9.  His motion asserts that, on several
dates in April and May 2024, Defendants "put [his] life, health, and safety and
welfare in serious danger." *Id.* at 1.  He seeks an order pursuant to Fed. R. Civ. P.
65(a) directing Defendants to: (1) transfer him from Attica; (2) "stop[ ] acts of
physical and mental abuse, brutality and torture, and inhumane conditions of
confinement and treatment;" (3) "stop acts of abuse, assault and excessive force and
injury upon [him], [providing] adequate safety protection from hands of danger . . .
"; (4) provide him medical care; and (5) comply with the HALT Act, N.Y. Correct.
Law § 137(6) and release him from solitary confinement. *Id.* at 2–3.

To obtain a preliminary injunction, the moving party must establish: (1) a
likelihood of irreparable harm absent preliminary relief; (2) a likelihood of success
on the merits; (3) the balance of equities tipping in favor of the moving party; and
(4) that the public interest is served by an injunction. *See Winter v. Nat. Res. Def.
Council, Inc.*, 555 U.S. 7, 20 (2008).  This same standard applies to motions for
temporary restraining orders. *See, e.g., Rush v. Hillside Buffalo, LLC*, 314 F. Supp.
3d 477, 484 (W.D.N.Y. 2018) (collecting cases).  A preliminary injunction "is an
extraordinary and drastic remedy, one that should not be granted unless the
movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v.
Armstrong*, 520 U.S. 968, 972 (1997) (internal quotation marks omitted); *see also
Bimbers Delwood, Inc. v. James*, 496 F. Supp. 3d 760, 771 (W.D.N.Y. 2020) (stating

22

that a temporary restraining order is "an extraordinary and drastic remedy; one not awarded as a matter of right or entitlement").

The Second Circuit has defined "irreparable harm" as "certain and imminent harm for which a monetary award does not adequately compensate . . . . [O]nly harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief." *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 113–14 (2d Cir. 2003). Courts view requests for injunctive relief against prison officials with "caution," *see Farmer*, 511 U.S. at 846–47, to avoid becoming increasingly "enmeshed in the minutiae of prison operations." *Bell v. Wolfish*, 441 U.S. 520, 562 (1979).

While the Court certainly is concerned with Plaintiff's allegations of assault and other actions of Defendants, his unsupported allegations are not sufficient to grant the extraordinary relief requested. A movant seeking a preliminary injunction "must do more than merely set forth 'enough facts to state a claim to relief that is plausible on its face'" in order "to establish a clear or substantial likelihood of success on the merits." *Benitez v. King*, 298 F. Supp. 3d 530, 536 (W.D.N.Y. 2018) (quoting *Twombly*, 550 U.S. at 570) (citing *Oneida Grp. Inc. v. Steelite Int'l U.S.A. Inc.*, No. 17-CV-0957 (ADS) (AKT), 2017 WL 6459464, at *8 (E.D.N.Y. Dec. 15, 2017) (noting that the standard required to prevail on a motion for a preliminary injunction "is higher than one to overcome a motion to dismiss")). In short, "[b]are allegations, without more, are insufficient for the issuance of a

preliminary injunction." *Kadant, Inc. v. Seeley Mach., Inc.*, 244 F. Supp. 2d 19, 40 (N.D.N.Y. 2003) (internal quotation marks omitted).

Because the Complaint only sets forth enough facts to state claims to relief that are plausible on their face with respect to Plaintiff's failure to protect, excessive force, and unsanitary-cell conditions claims, Plaintiff has not met the "far more demanding" standard, *Benitez*, 298 F. Supp. 3d at 536, for demonstrating entitlement to injunctive relief. Therefore, his motion for a TRO and preliminary injunction is denied, without prejudice to a potential future motion properly supported with adequate proof.

## IV.   LEAVE TO AMEND

Plaintiff has been granted leave to amend certain claims and the remaining claims will proceed to service upon the filing and screening of an amended complaint. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. Because the Complaint is long and repetitive, Plaintiff is reminded that any amended complaint shall set forth his claims in "short and plain statement[s] . . . showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). Therefore, the amended complaint, for each separate claim or act of misconduct alleged, shall specify (i) the alleged act of misconduct; (ii) the date or dates on which such misconduct took place; (iii) the name or names of each and every individual (Defendant) who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and (v) the nexus (connection) between such misconduct and Plaintiff's constitutional rights. Plaintiff may attach exhibits to his amended complaint, but they must be relevant

to the allegations of the amended complaint and organized in such a way that the
Court and Defendants can read and determine their relevance; the Court will not
independently examine exhibits that Plaintiff does not specifically reference (by the
exhibit's page number) in his amended complaint.

## CONCLUSION

Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a)
and filed an authorization, his request to proceed *in forma pauperis* is granted.
Dkt. 8. For the reasons set forth above, several of Plaintiff's claims must be
dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A unless he files an
amended complaint no later than **45 days from the date of this Decision and
Order** in which he includes the necessary allegations regarding the following
claims: (1) denial of food; (2) denial of medical care; (3) a false misbehavior report
filed in retaliation and without due process; (4) other forms of retaliation for filing
grievances; and (5) sexual assault, as directed above and in a manner that complies
with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Plaintiff is advised that an amended complaint is intended to <u>completely</u>
<u>replace</u> the prior complaint in the action, and thus it "renders [any prior complaint]
of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977); *see
also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).
Therefore, Plaintiff's amended complaint must include all the allegations against
each Defendant against whom the case is going forward, namely the failure to
protect, excessive force, and unsanitary-cell conditions claims, so that the amended

complaint may stand alone as the sole complaint in this action which Defendants must answer.

If Plaintiff fails to file an amended complaint as directed, the denial of food, denial of medical care, false misbehavior report filed in retaliation and without due process, retaliation, and sexual assault claims will be dismissed without leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A and service of the remaining claims on Defendants shall be directed.

Plaintiff's motion for a TRO and preliminary injunction is denied without prejudice.

## ORDER

In light of the foregoing,

IT HEREBY IS ORDERED, that Plaintiff's motion to proceed *in forma pauperis* (Dkt. 8) is granted; and it is further

ORDERED that Plaintiff's motion for a temporary restraining order and preliminary injunction (Dkt. 9) is denied without prejudice; and it is further

ORDERED that Plaintiff is granted leave to file an amended complaint only as directed above[5] **no later than 45 days from the date of this Decision and Order**; and it is further

---

[5] Plaintiff is reminded that he must also include in this amended complaint his failure to protect, excessive force, and unsanitary-cell conditions claims; because the amended complaint will become the sole complaint in the action, it is the only complaint which will be served on the parties.  Failure to include these claims in an amended complaint means that they are not preserved for service on Defendants.  If Plaintiff chooses not to file an amended Complaint, these three claims will proceed

ORDERED that the Clerk of Court is directed to send to Plaintiff, with this order, a copy of the original Complaint, a blank section 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

ORDERED that in the event Plaintiff fails to file an amended complaint as directed above **no later than 45 days from the date of this Decision and Order**, the denial of food, denial of medical care, false misbehavior report filed in retaliation and without due process, other forms of retaliation for filing grievances, and sexual assault claims are dismissed pursuant to 28 U.S.C. §§ 1915(2)(2)(B) and 1915A without leave to amend and without further order of the Court; and it is further

ORDERED that in the event Plaintiff has failed to file an amended complaint **no later than 45 days from the date of this Decision and Order**, the Clerk of Court is directed to cause the United States Marshals Service to serve copies of the summons, Complaint, and this order upon Defendants E. Raczkowski, W. Tomporowski, A.J. Holman, Goodwin, and J. Ellis, without Plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor;[6] and it is further

---

to service against Defendants, but his other claims will be dismissed without leave to amend.

[6] Pursuant to a Standing Order of Court, filed September 28, 2012, a defendant will have sixty days to file and serve an answer or other responsive pleading, *see* Fed. R. Civ. P. 12(a)–(b), if the defendant and/or the defendant's agent has returned an Acknowledgment of Receipt of Service by Mail Form within thirty days of receipt of the summons and complaint by mail pursuant to N.Y. C.P.L.R. § 312-a.

ORDERED that the Clerk of Court amend the caption to reflect the caption set forth in this order; and it is further

ORDERED that the Clerk of Court is directed to forward a copy of this order by email to Michael Russo, Assistant Attorney General in Charge, Buffalo Regional Office, Michael.Russo@ag.ny.gov; and it is further

ORDERED that, pursuant to 42 U.S.C. § 1997e(g), Defendants are directed to answer the Complaint; and it is further

ORDERED that Plaintiff shall notify the Court in writing if his address changes.  The Court may dismiss the action if Plaintiff fails to do so.

SO ORDERED.

Dated:       August 5, 2024
             Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE